IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JACK ALLEN WILSON,

        Plaintiff,                  CV F 02 6209 LJO WMW P

    vs.                          FINDINGS AND RECOMMENDATION

CALIF. DEPT. OF CORRECTIONS, et al.,

        Defendants.

        Plaintiff is a former state prisoner proceeding pro se in a civil rights action pursuant to 42 U.S.C. § 1983. This action proceeds on the ofist amended complaint filed on May 13, 2005.

        Plaintiff, an inmate in the custody of the California Department of Corrections at the California Substance Abuse Treatment Facility (SATF), brings this action against defendant correctional officials employed by the Department of Corrections at California State Prison

1

Corcoran. Plaintiff brings claims of deliberate indifference to his serious medical needs, as well as claims under the Americans With Disabilities Act (ADA), 42 U.S.C. § 12101 et seq. Plaintiff names as defendants the California Department of Corrections and fifty individual defendants.

On August 25, 2003, findings and recommendations were entered, recommending that this action be dismissed as duplicative. The findings and recommendations noted the following.

Plaintiff's complaint consists of 66 pages of typewritten narrative, and sets forth all of plaintiff's claims by date of occurrence. Plaintiff sets forth specific allegations of conduct on the following dates: 12/14/00; 12/23/00; 12/28/00; 1/10/01; 1/18/01; 1/22/01; 1/23/01; 2/14/01; 2/16/01; 3/1/01; 3/23/01; 4/4/01; 4/13/01; 4/15/01; 4/24/01; 5/1/01; 5/5/01; 5/8/01; 5/16/01; 5/20/01; 5/31/01; 6/1/01; 6/6/01; 6/25/01; 6/28/01; 7/3/01; 7/8/01; 7/25/01; 8/1/01; 9/13/01; 10/8/01; 10/10/01; 10/21/01; 10/25/01; 10/30/01; 11/7/01; 11/8/01; 11/13/01; 11/14/01; 11/16/01; 11/19/01; 11/20/01; 11/21/01; 11/22/01; 11/26/01; 11/27/01; (plaintiff alleges that from 11/17/001 to 1/16/02 he was denied breakfast, lunch and dinner); 11/28/01; 11/29/01; 12/12/01; 12/31/01; 1/22/02; 1/16/02; 1/30/02; 2/12/02; 3/12/02; 3/18/02; 5/3/02; 5/17/02.

Prior to the filing of this complaint, plaintiff filed a civil action challenging his medical care, and setting forth ADA claims. Wilson v. California Department of Corrections, et al., CV F 01 6538 REC LJO P. In that complaint, plaintiff names all of the defendants that are named in this case, with the exception of defendant Ortiz. On October 21, 2002, an order was entered, dismissing that complaint, granting plaintiff leave to file an amended complaint. The summary of allegations in that complaint

2

follows.

Plaintiff's amended complaint is fifty-seven pages long and consists of a lengthy list of incidents, in chronological order, that plaintiff believes demonstrates a violation of his constitutional rights. The majority of allegations relate to plaintiff's medical treatment, or lack thereof. The length of plaintiff's amended complaint and the sheer number of separate incidents make it difficult to concisely summarize plaintiff's allegations. In the paragraphs that follow, the court will summarize plaintiff's allegations as succinctly as possible.

In his amended complaint, plaintiff alleges that he was attacked by another inmate on May 13, 2000 at California Men's Colony East in San Luis Obispo. Plaintiff's skull was crushed and he suffers from permanent double vision as a result. Plaintiff is also mobility-impaired due to neck and back problems, and a type II diabetic. Plaintiff alleges he was transferred to Corcoran in order to accommodate his disabilities, and was to have follow-up surgery on the muscles around his left eye to remedy his chronic double vision, which causes him to run into people and things. Plaintiff alleges he has been under the care of defendant Dr. Meis for his medical problems since his arrival at Corcoran on December 14, 2000.

Plaintiff alleges that defendant Flores denied him his diabetic sack lunch for several days in December of 2000.

Plaintiff alleges that he filed a request for single-cell accommodation on January 10, 2001, because he ran into people and things due to his double vision, and was being threatened by his cellmate. Defendants Lowden, Yamamoto, and DeOchoa denied plaintiff's request and continued to house him with his cellmate, a CCCMS (Correctional Clinical Case Management) inmate.

Plaintiff alleges that he was interviewed for the first time by defendant Dr. Meis on January 18, 2001. Plaintiff informed defendant Meas. that he needed follow-up surgery to repair his eye and sack lunches, fingersticks, and exercise to control his diabetes. Plaintiff informed defendant Meas. that

he was checking his blood sugar four times a day at CMC-East. Defendant Meas. told plaintiff he would not be allowed daily fingersticks to monitor his blood sugar.

On January 22, 2001, defendant Meas. wrote orders for nightly sack lunches, extra toilet paper weekly for recurrent diarrhea, and a cane, and said he would make the necessary referral to an outside ophthalmology surgeon. Plaintiff alleges that defendant Meas. denied, delayed, or interfered with plaintiff's medical treatment.

On February 2, 2001, plaintiff was seen by defendant Dr. Perkinson, an ophthalmologist. Defendant Perkinson told plaintiff that his vision had worsened and that he would make the necessary referral to an outside ophthalmologist. Plaintiff alleges that defendant Perkinson intentionally failed to make the referral.

On February 9, 2001, plaintiff was seen by defendant Meas. regarding his need for single-cell status due to his double vision. Defendant Meas. said he would look into it. Plaintiff was again seen by defendant Meas. on February 14, 2001, at which time defendant wrote a medical order for a single cell.

On February 16, 2001, plaintiff was interviewed by defendant DeOchoa. Defendant DeOchoa told him that he did not care about any doctor's orders and that plaintiff was not going to get a single cell. On March 1, 2001, plaintiff was interviewed at Institutional Classification Review and denied single-cell status by defendants Yamamoto and DeOchoa, despite defendant Meas.'s medical order.

On March 23, 2001, plaintiff requested permission to have monthly food packages sent to him by his family in order to supplement his dietary intake to help control his diabetes. Defendants Meas., Yee, Lowden, Stockman, and Spreister denied his request and denied him a therapeutic medical diet. Plaintiff alleges he is forced to eat the food in the dining hall, which is high in sugar, saturated fats, and salt, and he is not allowed to supplement his intake.

Plaintiff's request for a medical order for

4

therapeutic exercise was granted on April 10, 2001 and plaintiff's request for a medical order for a wheelchair was granted on April 23, 2001. Plaintiff alleges defendant Lowden only allowed him to go to the yard for one hour with the Loss-of-Privilege inmates, and denied him daily exercise.

On April 15, 2001, plaintiff filed an inmate appeal directed at defendant Warden Calderon. Plaintiff requested that he enforce the medical orders for single-cell status and daily exercise. Plaintiff alleges defendants Lowden and Stockman interfered with these orders, and that his appeal was denied.

Plaintiff alleges defendant Becerra failed to respond to plaintiff's appeals and that defendant Castillo intentionally denied plaintiff his right to appeal.

On May 5, 2001, plaintiff filed a request seeking single-cell status, wheelchair access, exercise twice a day, double mattresses, and double pillows. Plaintiff also requested to be transferred to another institution close to Los Angeles. Defendant Lowden denied plaintiff's requests, and defendant Castillo denied plaintiff his right to appeal.

On May 1, 2001, plaintiff requested a blood testing machine and testing supplies so that he could monitor his blood sugar in his cell, because the medical department continued to deny plaintiff fingersticks. Defendant Meas. denied plaintiff's request.

On May 5, 2001, plaintiff filed an inmate appeal requesting a transfer to a facility closer to Los Angeles that would provide treatment for his disabilities, due to family hardship and his worsening condition. Defendants Lowden and Stockman denied his request.

Plaintiff alleges defendant Lowden occasionally allowed him to walk in the dayroom but denied plaintiff the opportunity to exercise on the yard on a daily basis. Plaintiff alleges that defendant Lowden denied him daily exercise from May 18, 2001 through May 27, 2001.

On May 25, 2001, plaintiff met with defendants

Lowden and Becerra in the program office regarding his requests for a transfer, single-cell status, daily exercise, and double pillows. Plaintiff informed them that defendant Meas.'s orders were not being followed, he was being discriminated against by staff because of his disabilities, and he was being threatened by his cellmate on a daily basis. Defendants denied his requests for a transfer and single-cell status, but said he would receive his pillows.

On May 31, 2001, plaintiff filed a request for daily showers because he was getting sores on his back and buttocks. Defendant Lowden denied his appeal.

On June 1, 2001, plaintiff was summoned to the program office to see defendant Lowden. On his way out of the cell, plaintiff ran into his cellmate because of his double vision. Plaintiff's cellmate then tried to stab plaintiff with the pen he had in his hand. Plaintiff warded off the attack by blocking his cellmate's hand. His cellmate then begged him not to tell anyone. Plaintiff met with defendant Lowden but did not say anything about the incident. When he returned, his property was on the dayroom floor and he was told he was moving to a different building.

On October 8, 2001, plaintiff filed an inmate appeal seeking soft sole shoes. Plaintiff alleges that the state-issued shoes caused him severe pain. A podiatrist ordered x-rays and said the shoes would be ordered when he saw the plaintiff at the next follow-up visit. Plaintiff alleges defendant Dr. Pillor denied him a follow-up visit with the podiatrist and denied his request for soft-soled shoes.

On October 21, 2001, plaintiff appealed the denial of his nightly diabetic sack lunch. Plaintiff alleges defendant Problete denied plaintiff his sack lunches and fingersticks. Plaintiff alleges defendants Thompson and Problete denied him his pain medication and refused to deliver his pain medication to his cell.

On November 8, 2001, defendant Pillor denied plaintiff's request for soft sole shoes, despite plaintiff's explanation that he was provided the

shoes at three prior institutions. On November 13, 2001, defendant Pillor wrote plaintiff a new form 1845 (ADA verification) specifically stating that plaintiff was a "DPW-disability placement wheelchair." (Amend. Comp., 33:16-18.) Plaintiff alleges this verification was necessary in order to transfer him to an institution that could accommodate his disabilities. Plaintiff alleges his medical file was subsequently tampered with because he was told the form did not exist.

On November 14, 2001, plaintiff requested that his medical chronos be renewed. Defendant Pillor stated that he was rescinding all of defendant Meas.'s medical orders. Plaintiff alleges he was therefore denied a wheelchair to ambulate to the review of his request, causing his request to be denied.

On November 16, 2001, plaintiff was being pushed by another inmate to the yard toilet. Plaintiff was in severe pain and it was urgent he reach the toilet. Defendant Aguirre stopped the other inmate from helping plaintiff, said plaintiff did not need any help, and said that if plaintiff needed to use the toilet, he could get there like everyone else.

On November 19, 2001, defendant Thompson did not deliver plaintiff's pain medication to his cell.

On November 27, 2001, plaintiff filed a request for gloves because his hands were raw from wheeling himself around the prison grounds. Plaintiff was denied access to a wheelchair to get to the interview so his request was denied. Defendant Pillor rescinded defendant Meas.'s medical order for a wheelchair, and defendant Problete confiscated plaintiff's wheelchair from in front of his cell. Plaintiff alleges that, if it were not for other inmates sliding food to him under his door, he would have been without breakfast, lunch, and dinner for sixty-one days. Plaintiff alleges that he had no access to the medical clinic, dining hall, law library, yard, visiting room, etc. Plaintiff alleges he could only walk twenty to twenty-five feet without having to sit or fall down due to the pain in his legs and feet.

On November 28, 2001, defendant Thompson denied plaintiff's request for a wheelchair to ambulate to

his medical appointment.  Plaintiff tried to walk to the nearest table but fell down with chest pains and shortness of breath.  Plaintiff was then transported to the hospital by ambulance.

On November 29, 2001, plaintiff's parents came to visit him and he was called for the visit.  Another inmate offered to lend plaintiff his wheelchair.  Plaintiff accepted and exited his housing unit in the wheelchair.  Defendant Spreister approached plaintiff and told him that if he wanted to go to visitation, he would have to walk like everyone else.  Defendant pulled the wheelchair out from under plaintiff.  Plaintiff was carried to the visiting room by two other inmates.

After the visit was over, one of the two inmates who helped plaintiff to the visiting room helped plaintiff from the visiting room.  On the way back, plaintiff collapsed from the pain.  Defendant Spreister was summoned and called defendant Problete.  Problete arrived with a wheelchair and took plaintiff back to his cell.  Plaintiff was subsequently issued a Rules Violation Report for misusing state property.

On November 27, 2001, defendant Hill refused to deliver plaintiff's mail to his cell.

On December 27, 2001, plaintiff requested a special therapeutic medical diet.  Plaintiff alleges his due process rights were violated when defendants Castillo and Bendon combined his appeals.

On December 31, 2001, plaintiff wrote an inmate appeal grieving the denial of his medication.  Plaintiff alleges his due process rights were violated when the appeals were combined.

On December 12, 2001, plaintiff submitted an inmate appeal requesting that the Rules Violation Report be dismissed.  Plaintiff alleges he was denied a fair hearing.

On January 26, 2002, plaintiff was given back his wheelchair and allowed to ambulate around the grounds.

On January 30, 2002, plaintiff was seen by defendant Dr. Bhatt.  Dr. Bhatt told plaintiff that his wheelchair would not be taken from plaintiff

> again, that he would write the necessary order for the wheelchair, and that he recommended plaintiff get exercise in the dayroom and on the yard.
>
> On February 21, 2002, plaintiff was seen by Dr. Brown, who told plaintiff that no orders had been written for his wheelchair and that there was no indication in his medical records that he had been seen by Dr. Bhatt.
>
> On the same day, plaintiff was interviewed by defendant Castillo regarding his appeal of the Rules Violation Report for misuse of state property. Defendant Castillo denied plaintiff's inmate appeal.
>
> On March 12, 2002, defendant Dr. Bhatt wrote a new CDC-1845 form regarding plaintiff's disabilities stating that plaintiff was to have a wheelchair on an "as needed" basis. Plaintiff alleges defendant Dr. Bhatt failed to check the appropriate box on the form that would have prevented future confiscation of plaintiff's wheelchair.
>
> On March 18, 2002, defendant Dr. Bhatt wrote a medical order for plaintiff to have a wheelchair on an "as needed" basis.
>
> On May 3, 2002, plaintiff was seen by Dr. Afinawitz, an ophthalmologist. Plaintiff gave Dr. Afinawitz a detailed description of his medical history and told Dr. Afinawitz that he was supposed to have follow-up surgery to repair his eye muscles. Dr. Afinawitz told plaintiff he would make the necessary referral to plaintiff could be taken back to San Joaquin Valley Hospital in Bakersfield. Plaintiff alleges he saw Dr. Afinawitz on May 10, 2002, and May 17, 2002. Plaintiff alleges Dr. Afinawitz denied, delayed, and interfered with plaintiff's medical treatment. Plaintiff alleges he continues to be denied surgery to repair his eye muscles.

**October 21, 2001 order in CV F 01 6538 REC LJO P, 3:1-8:11.**

The dates of the alleged conduct, as well as the conduct alleged, are similar to the facts set forth in the October 1, 2002, amended complaint in this case. The factual allegations do not materially differ.

1  Plaintiff currently has a deadline to file a second amended complaint in
2  CV F 01 6538. On August 1, 2003, plaintiff filed a motion for extension of
3  time in which to do so. The October 21, 2002, order identified the
4  deficiencies in the complaint.
5          In the August 25, 2003, recommendation the court found the
6  complaint duplicative of the July 10, 2002, amended complaint in CV F 01
7  6538. Plaintiff was advised that any additional factual allegations could
8  be set forth in that case. The court recommended that this action be
9  dismissed without prejudice as duplicative of CV F 01 6538 REC LJO P.
10          Plaintiff filed objections to the findings and recommendations.
11  Plaintiff did not challenge the factual basis of the recommendation, but
12  indicated that his claims in this case were statutory, not constitutional.
13  Though Plaintiff is proceeding with statutory claims in the 01-6538 case,
14  the court vacated the findings and recommendations and granted Plaintiff
15  leave to file a first amended complaint.
16          In the first amended complaint in this action, Plaintiff sets
17  forth the same factual allegations as in the 01-6538 action. Plaintiff alleges
18  that in January of 2001 he was placed in a cell with another inmate, who
19  harassed Plaintiff because Plaintiff bumped into things. As a result,
20  Plaintiff was threatened by his cellmate. Plaintiff filed an inmate
21  grievance, seeking a single cell. The grievance was denied. This claim is
22  set forth in the 2001 case.
23          Plaintiff also sets forth claims regarding a therapeutic exercise
24  program. Though phrased differently, this is the same conduct that is
25  challenged in the 2001 case. Plaintiff alleges various conspiracies
26

1  **regarding the response to his inmate grievances.  These allegations consist**
2  **of conclusory statements and legal conclusions.  Plaintiff attributes**
3  **retaliatory motives to the conduct of correctional staff in general.**
4  **        Plaintiff also sets forth various claims regarding wheelchair**
5  **access.  Plaintiff alleges that he experienced difficulty in showering.**
6  **Plaintiff alleges that as a result, he suffered bedsores and cysts that**
7  **required medical treatment.  As with the other claims, Plaintiff sets forth**
8  **a lengthy narrative regarding the administrative grievance process.  This**
9  **claim is also set forth in the 2001 case.**
10 **        The balance of the first amended complaint sets forth the same**
11 **generalized grievances regarding Plaintiff's disability and his attempts at**
12 **administrative redress as are set forth in the 2001 case.   Plaintiff sets fort**
13 **the same factual allegations as in the original complaint.**
14 **        Accordingly, IT IS HEREBY RECOMMENDED that this action**
15 **be dismissed as duplicative.**
16         These findings and recommendations are submitted to the United States District
17 Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636 (b)(1)(B).  Within
18 thirty days after being served with these findings and recommendations, Plaintiff party may file
19 written objections with the court and serve a copy on all parties.  Such a document should be
20 captioned "Objections to Magistrate Judge's Findings and Recommendations."   Plaintiff is
21 advised that failure to file objections within the specified time waives all objections to the
22 judge's findings of fact.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).  Failure to file
23 objections within the specified time may waive the right to appeal the District Court's order.
24 Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).
25
26

IT IS SO ORDERED.

**Dated:   May 31, 2007**                              **/s/  William M. Wunderlich**
                                                            UNITED STATES MAGISTRATE JUDGE